UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARRIYANNA BRYANT,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF ANTIOCH, et al.,<br><br>    Defendants. | Case No. 21-cv-00590-TSH<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 19 |

## I.  INTRODUCTION

Pending before the Court is Defendants City of Antioch ("City"), Officer Robert Gerber ("Gerber"), Officer Eric McManus ("McManus"), and Officer Jason Vanderpool ("Vanderpool") (collectively "Defendants") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 19) Plaintiff Mariyanna Bryant's ("Bryant") First Amended Complaint ("FAC").  ECF No. 11.  Bryant filed an Opposition (ECF No. 20) and Defendants filed a Reply.  ECF No. 23.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for the following reasons.

## II.  BACKGROUND

### A.  Factual Background

The following allegations in Bryant's FAC, as also summarized in her Opposition to the Motion, are taken as true for purposes of this motion.  At or around 4 p.m. on October 7, 2019, Bryant, identified in her FAC as "a hardworking and friendly young adult who is identifiable as African American" (FAC ¶ 13), was driving south on Auto Center Road in Antioch and was at the intersection of Century Boulevard (*see id.* ¶ 14) at the same time that Gerber, "was at a red light in

an unmarked [City-owned] Antioch Police Department vehicle, which belonged to his direct supervisor, in the second turning lane facing Eastbound on Century Boulevard." *Id.* ¶ 15. Bryant began to cross the intersection as the traffic light turned yellow "when suddenly and without warning [Gerber] . . . came out of nowhere and collided into the right rear passenger side of [Bryant's] vehicle." *Id.* ¶ 16. Gerber "who was stopped at a red light attempted turn right against his red light" and "traveling at a high rate of speed . . . caused the collision of the two vehicles by impacting the rear passenger sided of the [Bryant's] vehicle. *Id.* ¶ 17.[1]

Gerber, "seeing that [Bryant] and all of her passengers were young and African American, decided not to follow protocol in an attempt to cover up the facts of the accident in which he was at fault." *Id.* ¶ 18. Gerber "purposefully denied [Bryant] and her passengers police services by failing to dispatch police units but instead called his direct supervisor to the scene via his cellular telephone." *Id.* ¶ 19. Gerber's supervisor was the only law enforcement officer to report to the scene. *Id.* ¶ 20.

When the supervisor arrived,[2] Bryant heard him state, "What did you do this time?" and Gerber "responded with a nonchalant smile." *Id.* ¶ 21. Gerber "then fabricated a story about [Bryant] running a red light." *Id.* ¶ 22. When an ambulance arrived at the scene, Bryant heard one of the emergency medical technicians ask Gerber, "You again, what happened now?" *Id.* ¶ 23.

Bryant was taken to the hospital (*id.* ¶ 24) and diagnosed with a broken clavicle bone, fractured ribs, back injuries, a neck injury and a hip injury. *Id.* ¶ 25.

McManus "failed to investigate the incident in accordance with [the City's] policy and never contacted [Bryant] to question her about the accident or the sequence of events leading up to the accident." *Id.* ¶ 27. McManus "then purposefully produced a fraudulent police report which misstated facts and included a diagram that misrepresented the collision. . . [and which] placed

---

[1] Bryant's allegations here and later in the FAC appear to contradict each other, as Gerber cannot both have been stopped at the light and have "failed to stop at a red traffic signal and was traveling at unsafe speeds in violation of Cal. Vehicle Code § 22350 and § 214530(a)." FAC ¶ 49.

[2] McManus is identified in the FAC only as an "agent, servant, employee or a person authorized to prepare police reports on behalf of the City's police department" (FAC ¶ 8), but from context the Court understands that he is Gerber's supervisor.

1  [Bryant] at fault." *Id.* ¶ 29.  The City "did not discipline or investigate the actions of [McManus]."
2  *Id.* ¶ 28.  Vanderpool[3] reviewed and approved the report "without investigating the facts of the
3  accident." *Id.* ¶ 30.

4      The City "delayed the release of the report in attempt to hide and withhold evidence" (*id.*
5  ¶ 31), which harmed Bryant because she was unable to recover for her injuries.  *Id.*  The City
6  released the police report on February 4, 2020.  *Id.*  The City "then allowed [McManus] and
7  [Vanderpool] to forward the fraudulently produce [sic] report to [Bryant] and her insurance
8  company." *Id.* ¶ 32.

9      Bryant further alleges that the City "does not provide police services in this manner to its
10  white citizens and allowed it's [sic] officers not to follow multiple policies and procedures
11  concerning police investigations, report writing and the administration of police services to all
12  persons regardless of their race, color or national origin." *Id.* ¶ 33.  She further alleges that the
13  City's "deliberate, malicious, and negligent acts based on [Bryant's] race violated her
14  constitutional rights" (*id.* ¶ 34) and that she "suffered tremendous emotional harm that could have
15  been prevented if [the City] hadn't allowed its officers to interfere with [Bryant's] right to be
16  treated equally under the law." *Id.* ¶ 35.

17      **B.**    **Procedural Background**

18      On April 2, 2020, pursuant to Cal. Govt. Code §§ 905, 905.2, 910, 910.2, a Government
19  Claims Form was submitted on behalf of Bryant.  *Id.* ¶ 2.  On July 28, 2020 the City of Antioch
20  rejected the Government Claim.  *Id.* ¶ 3.  On August 4, 2020 the City of Antioch notified Plaintiff
21  that it rejected her claim.  *Id.* ¶ 4.

22      On October 20, 2020, Bryant filed her lawsuit in the Superior Court of California and on
23  January 25, 2021, Defendants removed it to federal court.  On April 29, 2021, Bryant filed her
24  FAC.  Bryant's FAC includes three state law claims and two federal claims.  The State claims are
25  for (1) General Negligence against the City and Gerber, (2) Negligent Hiring, Retention and

---

[3] Vanderpool is identified in the FAC only as "an agent, servant, employee or a person authorized to prepare and review [the City's] police reports" (FAC ¶ 9), so his relationship to Gerber and McManus remains undefined.

Supervision against the City and Does 1 through 20,[4] and (3) Negligent Entrustment of Motor Vehicle against the City and Does 1 through 20.  The federal claims, based on alleged discrimination against Bryant on account of her race, are for (4) violation of 42 U.S.C. § 1983 ("Section 1983"), Due Process under the Fourth and Fourteenth Amendment against all defendants and Does 1 through 20[5] and (5) a *Monell* Claim pursuant to Section 1983 against the City.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must accept as true all factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must give the plaintiff the benefit of every reasonable inference to be drawn from well-pleaded facts.  *Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).  Factual allegations taken as true "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *rehearing en banc denied*, 659 F.3d 850 (9th Cir. 2011).

To be entitled to the presumption of truth, however, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.*  The court is not required to accept as true a legal conclusion "couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor is the court "required to accept … allegations

---

[4] This claim has been withdrawn.  *See* Opp. at p. 9.

[5] Bryant incorporates by reference the allegations contained in paragraphs 1-27 in both of her federal claims, but her factual allegations also include paragraphs 28-35, covering the alleged lack of discipline against Gerber and the production of a fraudulent police report (¶¶ 28-32) and the claim that this conduct was based on race discrimination (¶¶ 33-35).  Hence the allegations of race discrimination have not been incorporated into either federal claim.

1    that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell
2    v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal is appropriate if the
3    complaint lacks a cognizable legal theory or if there are insufficient facts to support a cognizable
4    legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

5    When a motion to dismiss is granted, Federal Rule of Civil Procedure 15(a) provides that a
6    trial court shall grant leave to amend freely "when justice so requires." Rule 15(a)(2). The
7    Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182
8    (1962). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend
9    even if no request to amend the pleading was made, unless it determines that the pleading could
10   not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th
11   Cir. 2000). Indeed, this Circuit has a "longstanding rule that leave to amend should be granted if it
12   appears at all possible that the plaintiff can correct the defect." *Id.* (internal citations and quotation
13   marks omitted).

## IV.    DISCUSSION

**A.    State Claims**

**1.    Bryant's General Negligence and Negligent Entrustment of a Motor Vehicle Causes of Action Against The City Fail Because Bryant Identifies No Statutory Authority For Those Claims.**

California Government Code § 815 provides that, "[e]xcept as otherwise provided by statute: (a) A public entity is not liable for an injury. . ." Cal. Gov. Code § 815. As a result, under California law, all government tort liability is dependent on the existence of an authorizing statute and that statute must be identified in the pleadings. *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 785 n.2 (1985); *see also Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003) ("direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care. . ."). Furthermore, because all governmental tort liability is based on statute, "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity." *Lopez*, 40 Cal. 3d at 795; *see also D.K. v. Solano Cnty Office of Educ.*, 667 F. Supp. 2d 1184, 1198-99 (E.D. Cal. 2009) (dismissing state law claims against public entity because plaintiff failed to identify

United States District Court
Northern District of California

statutory basis for claims).

In support of her claim for General Negligence, Bryant alleges that because Gerber was negligently driving a City vehicle in the scope and course of his employment when he hit Bryant, the City is "vicariously liable" for the injuries to Bryant caused by Gerber's "negligent acts." FAC ¶¶ 37-39. In support of the Negligent Entrustment of a Motor Vehicle cause of action, Bryant's FAC contains only conclusory statements, namely that that Officer Gerber was at fault for the collision and that the City knew or should have known of his unfitness or incompetence but nonetheless entrusted him with the City vehicle, which he drove negligently into Bryant's car and that, as a result of the City's negligence, Bryant suffered physical and emotional harm. *Id.* ¶¶ 49-53.

Even taking these allegations as true, they are insufficient to support either negligence claim against the City as a public entity because Bryant's FAC fails to identify any statutory basis to support these causes of action, a pre-requisite to establishing liability against a public entity.

This deficiency in Bryant's FAC is not saved by the statutory arguments she makes in her Opposition. While she discusses California Government Code §§ 815.2[6] and 820[7] (*see* Opp. at pp. 8-9), the specific statute declaring a municipality to be liable must be identified in the pleadings. Bryant has thus failed to plead with particularity "every fact material to the existence of [the City's] statutory liability." *See Lopez*, 40 Cal. 3d at 795. Hence, Bryant's claims for General Negligence and Negligent Entrustment are not viable as currently pled and are therefore ripe for dismissal.

However, Bryant requests that the Court grant her leave to plead the General Negligence and Negligent Entrustment of a Motor Vehicle claims under California Government Code

---

[6] California Government Code § 815.2 states that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2.

[7] California Government Code § 820 states that, "[e]xcept as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov. Code § 820.

6

§§ 815.2 and 820, as well as *respondeat superior* theories of liability. Because it is possible that Bryant's pleading could be cured by including these or other additional allegations, leave to amend should be granted.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss on the General Negligence and Negligent Entrustment of a Motor Vehicle claims against the City **WITH LEAVE TO AMEND**.[8]

### 2. Bryant's General Negligence Cause of Action Against Gerber Stands.

Defendants assert that Bryant "failed to identify any statute authorizing liability against the City *or the police officers* but simply alleged those claims based on principles of common-law negligence," Motion p. 12 (emphasis added), and that Bryant's allegations "merely state a claim for common-law negligence, which is not sufficient because the Defendants are a public entity *and its employees*." Reply p. 3 (emphasis added). Hence, Defendants appear to argue that Section 815's requirement to identify a statutory basis for liability of a public entity also applies to a liability claim against employees of a public entity. This is not the case, however, as the plain language of Section 815 makes clear that it applies only to the public entity itself.

Accordingly, to the extent Defendants' Motion may be read as an attempt to dismiss the General Negligence cause of action against Gerber, the Court **DENIES** that part of the motion.

### B. Federal Claims

### 1. Bryant Fails Adequately To Allege A Claim For Violation of Title 42 USC § 1983, Due Process Under the Fourth and Fourteenth Amendments.[9]

A claim under Section 1983 requires a claimant to prove (1) that a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or

---

[8] Bryant includes her Negligent Hiring, Retention and Supervision cause of action in her request to amend, but since she has proactively withdrawn that claim (*see* Opp. at p. 9), the Court does not here grant leave to include that claim in her amended complaint.

[9] As mentioned above, Bryant fails to incorporate into her federal claims the allegations that the City's conduct was based on race discrimination (FAC ¶¶ 33-35), hence the allegations of race discrimination have not been incorporated into either federal claim. Although this could be excused as a drafting issue, in this case, it reinforces the lack of support for Bryant's Section 1983 claims, as further discussed below.

immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). The first inquiry in any Section 1983 suit is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

In her FAC, Bryant alleges a violation of Section 1983 because the "egregious conduct" by Defendants, a government agency and persons acting under color of law, violated her constitutional right to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution. FAC ¶ 56.[10] She further alleges that "[a]ll Defendants acted under color of law by interfering with [Bryant's] right to have police services administered in a nondiscriminatory manner which led to her inability to recover under insurance policies." *Id.* ¶ 58. The gravamen of Bryant's civil rights claims, then, is not that she was denied adequate police services but that she was denied nondiscriminatory police services based on her race.

Defendants argue that they are immune from liability based on California Government Code § 820.2 because the acts complained of "were performed in the officers' discretion while investigating the collision." Reply at p. 5. However, Defendants cite no legal authority to show that a state statute could somehow create immunity from Section 1983. The Ninth Circuit's decision in *Hen v. City of Los Angeles*, 244 Fed. Appx. 794 (9th Cir. 2007), discussed public entity immunity under California law, not federal law. And *Alston v. Cty. of Sacramento*, 2019 U.S. Dist. LEXIS 20348, *9-10 (E.D. Cal. Feb. 7, 2019), rejected an attempt to base a Section 1983 claim on a violation of an alleged legal duty created by state law. Neither case stands for the proposition that state law can create immunity from federal law.

On a more substantive level, Defendants argue that Bryant's federal claims under Section 1983 fail because she does not identify any constitutionally protected right that the City or the individual defendants violated. They argue that she alleged only violations of the "right" to a

---

[10] Paragraph 56 also refers to the Fourth Amendment, but the Court does not understand why. Bryant's opposition brief makes clear that her Section 1983 claim is based on race discrimination (as opposed to being searched or seized without a search warrant or probable cause). Accordingly, the Court will address only Bryant's claim for violation of the Fourteenth Amendment.

1    police report and the "right" to collect under insurance policies and that there is no federal right
2    under the Constitution or the laws of the United States to have police services, or even adequate
3    police services. Reply at p. 6. They assert further that Bryant's allegations amount to "failure to
4    provide sufficient police protection service" and are therefore barred by California Government
5    Code § 845.[11] *Id*.

6    Defendants rely on *Gates v. Superior Court*, 32 Cal. App. 4th 481 (1995) to argue that they
7    are entitled to Section 845 immunity. In *Gates*, a California Court of Appeals held that a
8    discrimination case involving allegations that defendant police officers had violated plaintiffs'
9    rights under California Civil Code §§ 51.7 (right to be free from violence) and 52 (denial of civil
10   rights) based on "the failure to properly train and mobilize officers; the withdrawal of officers
11   from minority neighborhoods; the fact officers were not deployed or redeployed; the failure to
12   respond to telephone calls for emergency police assistance; the absence of a police response to
13   acts of violence and looting; or the denial of protective services" nevertheless "squarely falls
14   within the ambit of a 'failure to provide sufficient police protection service'" for which Section
15   845 precludes liability. *Gates*, 32 Cal. App. 4th at 503-504. *Gates*, then, involved California
16   statutory immunity for violations of the California Constitution and statutes[12] for failure to provide
17   adequate police services, not immunity from federal law.

18   The Ninth Circuit has determined that there is indeed a federal constitutional right "to have
19   police services administered in a nondiscriminatory manner—a right that is violated when a state
20   actor denies such protection to disfavored persons." *Est. of Macias v. Ihde*, 219 F.3d 1018, 1028
21   (9th Cir. 2000). Bryant's Section 1983 cause of action claims a violation of the Fourteenth
22   Amendment. As stated above, Bryant specifically alleges in her FAC that Defendants violated her
23   right to police services administered in a nondiscriminatory fashion (the constitutional violation)

---

[11] Section 845 provides that "[n]either a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." Cal. Gov. Code § 845.

[12] The case also included claims for federal civil rights violations but these were not at issue in the *Gates* opinion, as it involved only claims for violations of California civil rights statutes and equal protection rights under the California Constitution, Article I, § 7(a).

which caused her to be unable to recover under insurance policies fashion (the consequence of the constitutional violation). FAC ¶¶ 57-58. Section 845 is a state law and does not and cannot preclude liability for this type of alleged violation of a federal constitutional right.

With respect to Officer Gerber, Bryant alleges that "seeing that [Bryant] and all of her passengers were young and African American, [Gerber] decided not to follow protocol in an attempt to cover up the facts of the accident in which he was at fault." FAC ¶ 18. Bryant further alleges that Gerber "then purposefully denied [Bryant] and her passengers police services by failing to dispatch police units but instead called his direct supervisor to the scene via his cellular telephone." *Id.* ¶ 19. These allegations are sufficient to state a claim against Gerber.

However, Bryant's FAC is entirely devoid of factual allegations showing that McManus or Vanderpool committed race discrimination. There are no allegations that, if credited, would support a claim that racial discrimination motivated these Defendants' conduct. Further, Bryant's allegations in paragraphs 31-35 of the FAC that the City committed race discrimination are not only not incorporated into her fourth cause of action but are also conclusory.

Accordingly, the Court **DENIES** Defendants' motion to dismiss the Section 1983 against Defendant Gerber and **GRANTS** Defendants' motion to dismiss the Section 1983 against Defendants McManus, Vanderpool, and the City **WITH LEAVE TO AMEND**.

**2. Bryant's *Monell* Claim Fails Because She Does Not Allege Facts Of Sufficient Specificity To Impose Liability On The City.**

A local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

A plaintiff alleging a failure to train claim under *Monell* must show: (1) she was deprived of a constitutional right, (2) the municipality had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact, and (3) her constitutional injury would have been avoided had the municipality properly trained those officers. *See Young v. City of Visalia,* 687 F. Supp. 2d 1141, 1148 (E.D. Cal. 2009) (citations and internal quotations omitted). As with liability based on improper custom, where a *Monell* claim is premised on inadequate training or supervision, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability...." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Rather, a plaintiff must allege and prove widespread, systematic constitutional violations that have become "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 491. Moreover, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the "moving force" behind the plaintiff's deprivation of federal rights. *See id.* at 694.

Bryant contends that allegations in the FAC – that (1) Officer Gerber drove recklessly (FAC ¶¶ 16, 17), (2) "after seeing that [Bryant] and all of her passengers were young and African-American, [Gerber] decided not to follow protocol in an attempt to cover up the facts of the accident in which he was at fault" (*id.* ¶ 18), (3) Officer McManus failed to properly investigate the collision "in accordance with Defendant City policy" (*id.* ¶ 27) and produced an intentionally fraudulent police report (*id.* ¶ 29), and (4) Officer Vanderpool reviewed and approved the report "without questioning the clearly improper protocol's [sic] used and faulty reporting mechanisms" (Opp. at p. 11, citing FAC ¶ 30) – indicate a "clear pattern" of "customs and practices" by the City of Antioch. Opp. at p. 11. Hence, Bryant alleges a *Monell* claim against the City based on the officers' actions; however, it is well-settled that municipalities are not vicariously liable for the actions of their employees. *Monell*, 436 U.S. at 691 (a municipality "cannot be held liable under §1983 on a *respondeat superior* theory.")

In addition, the FAC's allegations that the City "does not provide police services in this manner to its white citizens and allowed it's [sic] officers not to follow multiple policies and

11

1  procedures concerning police investigations, report writing and the administration of police
2  services to all persons regardless of their race, color or national origin" (*id*. ¶ 33) and that its
3  "deliberate, malicious, and negligent acts based on [Bryant's] race violated her constitutional
4  rights" (*id*. ¶ 34) amount to little more than legal conclusions couched as factual allegations. As a
5  result, the Court is not required to accept these allegations as true.

Bryant also alleges that the City had a duty to adequately train, supervise, and discipline its officers in order to protect Bryant "from being harmed unnecessarily." FAC ¶ 60. She alleges the City was "deliberately indifferent to such duties" (*id.* ¶ 61) and created an "atmosphere in which officers believe they may act with impunity when engaging in unlawful conduct." *Id.* ¶ 62. Bryant asserts that she has stated a cause of action under the "training and custom" analysis of *Monell* because "these are not random and singular instances of malfeasance." Opp. at p. 11.

However, despite these assertions, Bryant's FAC does, in fact, allege only a single, isolated instance of misconduct. Hence, her allegations are inadequate to demonstrate conduct of sufficient duration, frequency and consistency that it has become the City's traditional method of carrying out policy that would support a *Monell* claim. Nor can one incident of alleged misconduct amount to a pattern of behavior constituting a custom. Further, Bryant's specific allegations concerning this one incident are in some ways inconsistent with a *Monell* claim. As noted above, Bryant alleges that Gerber "decided not to follow protocol in an attempt to cover up the facts of the accident in which he was at fault" (FAC ¶ 18) and that McManus "failed to properly investigate the matter in accordance with Defendant City policy," *id*. ¶ 27. Individual officers' departures from protocol and policy tend to undermine a *Monell* claim (unless there are allegations that the departures are themselves a custom, which is not alleged here).

The FAC contains no allegations regarding any particular unconstitutional policy or custom of the City's Police Department that the officers followed that caused the deprivation of Bryant's constitutional rights. Bryant's FAC also fails to identify any deficiencies whatsoever in the City's training program. The FAC does not, for example, specify what training and hiring practices led to the deprivation of her rights, how these practices were constitutionally deficient, how they caused her harm, or any indication of the "obviousness" of the risk involved. Without

identifying a relevant municipal policy or custom, Bryant cannot – and has not – alleged that this policy was the "moving force" behind the constitutional deprivation. Therefore, the Court cannot say that a claim has been stated for the kind of deliberate indifference that would "plausibly indicate a valid *Monell* claim." *See Young*, 687 F. Supp. 2d at 1150.

In the end, then, Bryant's FAC does no more than make conclusory, "threadbare" allegations that merely recite the elements for a cause of action under *Monell*. Such allegations are inadequate to confer liability on the City under *Monell* and cannot defeat a motion to dismiss. *Cf. Iqbal*, 129 S. Ct. at 1949–50.

Accordingly, the Court **GRANTS** the motion to dismiss as to the *Monell* claim against the City **WITH LEAVE TO AMEND**.

## V. CONCLUSION

For the reasons stated above, the Court **ORDERS** the following:

1. Defendants' motion to dismiss the General Negligence claim (First Cause of Action) against the City is **GRANTED** and the claim is **DISMISSED WITH LEAVE TO AMEND**;

2. Defendants' motion to dismiss the General Negligence claim against Gerber is **DENIED**;

3. The Negligent Hiring, Supervision, and Retention Claim (Second Cause of Action) against the City has been **WITHDRAWN** by Bryant;

4. Defendants' motion to dismiss the Negligent Entrustment Of A Motor Vehicle claim (Third Cause of Action) against the City is **GRANTED** and the claim is **DISMISSED WITH LEAVE TO AMEND**;

5. Defendants' motion to dismiss the Section 1983 claim (Fourth Cause of Action) against the City and Officers McManus and Vanderpool is **GRANTED** and the claim is **DISMISSED WITH LEAVE TO AMEND**;

6. Defendants' motion to dismiss the Section 1983 claim against Gerber is **DENIED**;

7. Defendants' motion to dismiss the *Monell* claim (Fifth Cause of Action) against the City and is **GRANTED** and the claim is **DISMISSED WITH LEAVE TO AMEND**;

1     8.  Bryant may file a second amended complaint no later than thirty (30) days after the date
2 of this order.
3     **IT IS SO ORDERED.**

Dated: August 12, 2021

THOMAS S. HIXSON
United States Magistrate Judge